IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:06-CR-00313-FL-1
NO. 5:11-CV-00097-FL

| | |
|---|---|
| HOPETON FRANK GOODEN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

This cause comes before the Court upon the government's motion to dismiss (DE-105) petitioner Hopeton Frank Gooden's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate") (DE-98). Gooden has responded (DE-110, DE-115), and the government has replied. (DE-118). On November 1, 2011, the Court ordered that the government's motion to dismiss be treated as a motion for summary judgment and notified Gooden accordingly. (DE-114). Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. For the following reasons, it is hereby RECOMMENDED that the government's motion to dismiss, construed as a motion for summary judgment, (DE-105) be GRANTED and that Gooden's motion to vacate (DE-98) be DENIED.

1

## I. BACKGROUND

Petitioner Gooden was indicted and ultimately convicted by a jury of three charges: being an unlawful alien in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(5), 924(e)(1); possessing marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 21 U.S.C.A. § 841(b)(1)(D); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(e)(1). (DE-14, DE-80). The district court sentenced Gooden under the provisions of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), imposing a term of 327 months in prison. (DE-80, DE-88). The Fourth Circuit affirmed the judgment (DE-92, DE-93), and the United States Supreme Court denied Gooden's petition for writ of certiorari. *See* United States v. Gooden, 340 Fed. Appx. 895 (4th Cir. 2009) (unpublished), *cert. denied*, Gooden v. United States, 130 S. Ct. 1688, 176 L. Ed. 2d 186 (2010).

Proceeding pro se, Gooden filed his § 2255 petition on February 28, 2011. (DE-98). The government now seeks dismissal of Gooden's § 2255 petition. (DE-105, DE-118). However, as the government attached several exhibits to its motion, its motion to dismiss will be treated as one for summary judgment. (DE-114). Gooden responds that he is entitled to relief and requests an evidentiary hearing.[1] (DE-110, DE-115).

## II. LEGAL STANDARDS

### A. Summary Judgment

---

[1] As demonstrated *infra*, the undersigned finds that an evidentiary hearing is unnecessary because the claims in the petition can be resolved on the basis of the present record.

The government seeks summary judgment on Gooden's petition. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The party seeking summary judgment must come forward and demonstrate the absence of a genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When making the summary judgment determination, the facts and all reasonable inferences must be viewed in a light most favorable to the non-moving party. *See* Anderson, 477 U.S. at 255. While viewing the facts in such a manner, courts look to the affidavits or other specific facts to determine whether a triable issue exists. *Id.* at 248. Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Celotex, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993).

**B. 28 U.S.C. § 2255**

After conviction and exhaustion, or waiver, of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See* United States v. Frady, 456 U.S. 152, 164-65 (1982). However, prisoners in federal custody may attack

3

the validity of their convictions pursuant to 28 U.S.C. § 2255. Under § 2255, a prisoner in federal custody may challenge his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The burden is on the prisoner to establish his claim to relief by a preponderance of the evidence. *See, e.g.*, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); Toribio-Ascencio v. United States, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549 at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

**C. Ineffective Assistance of Counsel**

As the primary basis for his § 2255 claim, Gooden contends both his trial and appellate counsel were ineffective. To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test. Strickland v. Washington, 466 U.S. 668, 686-87 (1984). First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688. This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689. Therefore, the Court must "indulge a strong

4

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Concerning the second prong, a petitioner must show that he was prejudiced by the ineffective assistance by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The standard of effective assistance of appellate counsel is the same as for trial counsel. *See* Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) ("In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate (1) that his 'counsel's representation fell below an objective standard of reasonableness' in light of the prevailing professional norms, and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting Strickland, 466 U.S. at 688, 694), *cert. denied*, 534 U.S. 830 (2001). On review, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

### III. ANALYSIS

#### A. Ground One: Ineffective Assistance of Counsel

As his first ground for relief, Gooden argues his counsel was ineffective in a number of respects, in that counsel (1) failed to prevent or appeal the sixth-month delay between his arrest and his indictment; (2) failed to offer certain evidence at an evidentiary hearing on his motion to suppress; and (3) failed to obtain testing for certain videotape evidence.

#### 1. Delay

5

Gooden contends there was a sixth-month delay between his arrest on June 1, 2006 and the indictment on December 13, 2006, and that his counsel was ineffective in failing to object to such delay. His claim lacks a factual basis, however, and is therefore without merit.

Under the Speedy Trial Act, an indictment must be filed within thirty days from the date on which a defendant is arrested, 18 U.S.C. § 3161(b), and the trial must commence within seventy days of the filing date of the indictment or the date of a defendant's initial appearance, whichever is later. 18 U.S.C. § 3161(c)(1). Certain delays are excludable when computing the time within which a defendant must be indicted or his trial must commence. 18 U.S.C. § 3161(h)(1)-(9). In order to trigger the thirty-day limit for speedy trial purposes, "*both* a federal complaint and a federal arrest and/or federal summons are required." United States v. Lee, 818 F.2d 302, 305 (4th Cir. 1987). An "arrest" under section 3161(b) consists of a federal arrest on a federal charge. *Id.*; United States v. Iaquinta, 674 F.2d 260, 264 (4th Cir. 1982). A federal complaint and federal detainer filed against a defendant in state custody do not constitute an "arrest" for purposes of the Speedy Trial Act. Lee, 818 F.2d at 304. Nor does an arrest become federal because federal agents cooperate with state law enforcement. United States v. Taylor, 240 F.3d 425, 427-28 (4th Cir. 2001).

Here, the record shows Gooden was arrested on the federal charges on December 19, 2006, just six days after the indictment issued. Gooden's arrest on June 1, 2006, was

6

by the North Carolina State Highway Patrol.[2] (DE-28, p.6, DE-18-5). Because his arrest on June 1, 2006 was not a federal arrest on federal charges, and as his federal arrest occurred within six days of his federal indictment, Gooden cannot assert a speedy trial violation.

Moreover, even if Gooden could show pre-indictment delay, he has failed to demonstrate any prejudice arising from delay. *See* United States v. Stinson, 594 F.2d 982, 984 (4th Cir. 1979) (noting that a due process violation occurs only when the delay actually prejudices the conduct of the defense or when it is shown that the government has deliberately delayed to gain a tactical advantage). Gooden argues he was prejudiced because the delay gave the prosecution more time to tamper with evidence. Specifically, Gooden asserts that a video recording of the traffic stop leading to his arrest was "doctored" and is not an accurate depiction of events. As will be discussed *infra* in subsection 3, Gooden's allegations of evidence tampering have no foundation and have been rejected by this Court.

Gooden's trial attorney, Assistant Federal Public Defender Joseph L. Ross, II, has explained that he

> did not file a motion concerning the pre-indictment delay because I did not know of any facts indicating the delay caused substantial prejudice to his right to a fair trial. I was also not aware of any facts indicating that the

---

[2] A seizure report by the North Carolina State Highway Patrol confirms that Trooper Anthony DiGiovanni arrested Gooden on June 1, 2006 pursuant to a traffic stop. (DE-99-1). While Gooden evidently believes this report proves he was arrested by ATF Special Agent Stephen Babits, (DE-99, p.3 n.2) he is mistaken. The report merely shows that ATF agreed to adopt the seizure. *See also* DE-18-5, p.4 (Trooper DiGiovanni's arrest report) and DE-86, p.93 (Trooper DiGiovanni's trial testimony).

7

>   delay was an intentional device for the government to gain some tactical advantage. Additionally, it is my memory that Mr. Gooden was in state custody during most or all of this period. Therefore, I did not find sufficient facts to substantiate a due process violation.

(DE-106-1, pp.1-2).

Gooden construes Ross's affidavit as an admission that he did not adequately investigate the case. This novel interpretation notwithstanding, Gooden articulates no facts to indicate any prejudice arising from pre-indictment delay. As such, he has failed to show that the representation he received fell below an objective standard of reasonableness, or that the results of any proceeding would have been different absent his counsel's alleged errors.

### 2. Failure to present evidence in support of motion to suppress

Gooden filed a motion to suppress evidence seized during a traffic stop leading to his arrest. (DE-18). The underlying facts of the traffic stop are summarized in a memorandum recommending denial of the motion (DE-28), which was later adopted in an order by the Court (DE-34), and need not be extensively repeated here. Briefly, on the morning of June 1, 2006, North Carolina State Highway Patrol Trooper DiGiovanni stopped Gooden as he was driving south on Interstate 95 in Johnston County, North Carolina, after he observed Gooden speed and abruptly change lanes, nearly causing a collision with another vehicle. (DE-34, pp.1-2). During the stop, Gooden consented to a search of his vehicle, upon which DiGiovanni discovered two hundred and fifty grams of marijuana, drug paraphernalia, and a suitcase containing four firearms, three hundred and eleven rounds of ammunition, and six magazine clips. (DE-34, p.2). A recording device

8

mounted on DiGiovanni's patrol vehicle captured video and audio of the search and a substantial portion of the discussion between DiGiovanni and Gooden, and the resulting video recording was presented at the suppression hearing.

In the factual summary in support of his motion to suppress, Gooden alleged DiGiovanni placed him in the front-side passenger seat of the patrol vehicle while questioning Gooden prior to the search. According to Gooden, "[t]he vehicle was locked, and [he] did not feel free to leave." (DE-18, p.3). Gooden argued in his motion that his restraint in the patrol vehicle rendered his subsequent consent to search involuntary. At the suppression hearing, however, Gooden presented no testimony on this issue. The Court found that

> once DiGiovanni gave defendant his warning ticket along with his driver's license and rental car agreement, the traffic stop concluded. Defendant was not then subject to any restraint. Although defendant was in the front passenger seat of DiGiovanni's patrol car, alongside DiGiovanni (Tr. 10), that fact does not demonstrate restraint, especially when the back seat was not available because of the canine. In addition, the court accepts DiGiovanni's testimony that the doors of the car were unlocked. (Tr. 10). The court rejects defendant's contention to the contrary (Def.'s Mot., p. 3), in part, because it is set forth only as argument in his memorandum and is unsupported by any testimony or other evidence. In addition, not only does DiGiovanni have more credibility generally than defendant, there is no indication on the Video that DiGiovanni locked the passenger side door after defendant entered the patrol car. Accordingly, the conversation between defendant and DiGiovanni in the aftermath of issuance of the ticket was a consensual encounter.
> 
> The subject matter discussed substantiates the consensual nature of the encounter. Defendant began the consensual conversation by asking DiGiovanni where the closest rest area was located. (Video, 07:30:59). DiGiovanni responded by discussing directions with defendant, as well as stopping for something hot to drink. (*Id.*, 07:31:25). It was only then that DiGiovanni began to ask defendant about the contents of his car and consent

to search it.  (*Id.*, 07:31 :31) (DE-28, p.10).

Gooden now argues that his counsel's failure to elicit testimony at the suppression hearing on the issue of whether the patrol vehicle door was locked constitutes ineffective assistance of counsel.  He contends that another officer on the scene, Trooper S.T. Eller, could have confirmed that the door to the patrol vehicle was locked, and that counsel's failure to interview or solicit Eller's testimony was patently deficient and highly prejudicial to his motion to suppress.  Gooden's claim fails on several grounds.

First, contrary to Gooden's assertions, attorney Ross investigated the traffic stop and "[n]one of the people involved in the stop, except for Mr. Gooden, said that the passenger's door was locked.  Therefore there was no evidence to present concerning the doors being locked." (DE-106-1, p.2).  Moreover, the decision to call or not to call a witness is a strategic decision not generally subject to challenge.  *See* Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); Squires v. Fleming, 658 F. Supp. 800, 805 (E.D. Va. 1987) (noting that "trial counsel's failure to introduce . . . [certain] evidence was part of sound trial strategy.  Accordingly, these claims cannot be considered as evidencing deficient performance.").  Gooden has therefore failed to show his counsel's performance fell below an objective standard of reasonableness.

Even assuming his counsel's performance was deficient, Gooden's claim would nevertheless fail the prejudice prong.  Gooden's failure to present evidence in support of

10

his allegation that the patrol vehicle was locked was only part of the basis for the Court's rejection of his claim. The Court also determined that (1) DiGiovanni's testimony was generally more credible than Gooden's; (2) there was no indication on the videotape that DiGiovanni locked the passenger side door after Gooden entered the patrol car; and (3) the subject matter of their subsequent conversation indicated the consensual nature of the encounter. (DE-28, p.10). As the Court denied Gooden's motion to suppress on multiple grounds, Gooden cannot show that, but for his counsel's decision not to call Trooper Eller, the outcome of the motion to suppress would have been different. Therefore, Gooden is not entitled to relief on this ground.

### 3. Failure to have videotape scientifically tested

Gooden asserts that the video recording of the traffic stop has been "drastically altered" and that his counsel failed to have it scientifically examined "by a forensic audio-video specialist using proper techniques and equipment." (DE-110, p.8). However, the evidence of record contradicts this assertion. The original videotape was submitted to Larry Wolfe of Wolfe Audio Visual Productions in Fayetteville, North Carolina. (DE-106-1, p.2). Mr. Wolfe analyzed the tape frame by frame and found no evidence of any alterations. (DE-106-1, Exhibits A, B). This Court has already explicitly found that there is no evidence of tampering with the videotape. (DE-34, p.3). Notably, although Gooden asserts he has viewed the video recording and "knows exactly what was edited out from it, and what was edited onto it," he does not elaborate on the manner in which it has been altered or explain what an "unaltered" version would reveal.

11

This claim therefore has no merit.

### B. Ground Two: Enhancement under 18 U.S.C. § 924(e)

Gooden contends the district court erred in relying upon the presentence investigation report when it determined that he was an armed career criminal under 18 U.S.C. § 924(e), in violation of the Supreme Court's decision in Shepard v. United States, 544 U.S. 13 (2005), and that his counsel was ineffective for failing to raise this claim. However, Gooden already challenged his armed career criminal status on appeal and the Fourth Circuit rejected his claim. (DE-92). He therefore cannot re-litigate this claim under § 2255. *See* Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). To the extent Gooden argues his present challenge to his armed career criminal status differs from his argument on appeal, the decision regarding which arguments to present on appeal is a strategic decision left to the reasonable discretion of the appellate attorney, and there is no "duty to raise every colorable claim suggested by a client." Jones v. Barnes, 463 U.S. 745, 754 (1983) (internal quotation marks omitted). Gooden fails to show that his appellate counsel acted in an objectively unreasonable manner, or that the alleged error prejudiced him. This claim is therefore without merit.

Gooden also complains that the trial court improperly found that a two-level adjustment for obstruction of justice was warranted, and that his counsel was ineffective for failing to object or to raise this issue on appeal. Claims of error regarding application of sentencing guidelines generally cannot be raised in a § 2255 petition. United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Gooden's claims regarding this issue were

12

available to him at the time of sentencing and thus could have been the subject of a timely direct appeal. Even if Gooden's presentation of this issue was timely, the claim still fails. The two-level sentencing enhancement for obstruction that Gooden received was entirely consistent with the mandate of U.S.S.G. § 3C1.1, which provides for an increase of two levels when the defendant willfully obstructs or impedes the administration of justice. *See* United States v. Dunnigan, 507 U.S. 87, 96 (1993) ("[A] defendant's right to testify does not include a right to commit perjury."). While the district court made no specific finding as to perjury, it noted that the enhancement was based on Gooden's trial testimony. (DE-88, p.4). Gooden testified on the stand that he had no knowledge of the firearms found in his suitcase. The jury, however, unequivocally rejected this testimony and found him guilty of knowingly possessing firearms. Thus, "there can be no question that the jury, having found that the offenses were committed, would also have determined that [Gooden] willfully and falsely testified about a material matter." United States v. Mayes, 178 Fed. Appx. 331, 334 (4th Cir.) (unpublished) (concluding that, even if the district court committed *Booker* error, the obstruction of justice enhancement was nevertheless proper where the jury obviously rejected the defendant's version of material events), *cert. denied*, Mayes v. United States, 127 S. Ct. 308 (2006). This assignment of error is therefore without merit.

### C. Ground Three: Ineffective Assistance of Appellate Counsel: Expert Testimony

As his third ground for relief, Gooden argues his appellate counsel was ineffective in failing to appeal the exclusion of expert testimony at trial regarding Santeria religious

13

practices.

At trial, Gooden attempted to introduce expert testimony by Frank Medina, an attorney practicing in Wisconsin, as to the Santeria religion. In his Rule 16(b)(1)(C) notice, Gooden stated that Medina would "testify to historical and practical factors of Santeria, and to the magical practices that could compel a person to act unknowingly against their will." (DE-55-2, p.1). The government moved *in limine* to exclude Medina's testimony, arguing it was inadmissible under *Daubert* and otherwise irrelevant. (DE-55). When questioned at the motion hearing as the relevance of Medina's testimony, counsel explained it would provide context and refute Gooden's knowledge of the firearms found in his vehicle. (DE-86, pp.31-32). The government responded that, inasmuch as Gooden was attempting to offer a defense "to a large degree based on a lack of volitional control of some sort," such defense was specifically precluded by the Insanity Defense Reform Act, 18 U.S.C. § 17, as interpreted by the Fourth Circuit in *United States v. Worrell*, 313 F.3d 867 (4th Cir. 2002). (DE-86, pp.40-41). The trial court agreed with the government and determined that, although Medina potentially qualified as an expert in Santeria, his testimony was nevertheless "not helpful" and "r[an] afoul of a number of rules." (DE-86, p.44). The trial court therefore excluded Medina's testimony.

Gooden now contends the trial court erred in excluding testimony regarding Santeria and that his appellate counsel was ineffective for failing to appeal the issue. He denies offering the expert testimony to show lack of volition, asserting instead that Medina's proposed testimony "was strictly for purposes of explaining the belief and rituals of those

14

that practice Santeria." (DE-99, p.16). He argues that the evidence regarding Santeria "went to the heart of his defense" because it showed "that on the day before he was arrested he interacted with an antagonist who practiced Santeria" and "that someone had the mind set, motive, means and opportunity to tamper with [his] property." (DE-99, p.17). This claim has no merit.

Contrary to his present assertions, Gooden notified the government that he intended to offer Medina's testimony to illuminate the "magical practices that could compel a person to act unknowingly against their will." (DE-55-2, p.1). At the hearing, defense counsel explicitly stated that Gooden "did not know the guns were there" because of the "influence of Santeria." (DE-86, p.40). The trial court agreed with the government that this defense was precluded by the Fourth Circuit's decision in *Worrell*. Absent a Santeria-based defense, the nature and belief system of Santeria was completely irrelevant to Gooden's trial and properly excluded. *See* Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible").

Although Gooden argues that evidence of Santeria was necessary to show that someone else placed the firearms in his vehicle, the record shows that Gooden testified to this possibility. At trial, Gooden testified that on the evening before his traffic stop, he visited a former girlfriend, Yvette Frias, with whom he had a child. (DE-86, p.271). Gooden wanted to see his son, but he was not present at the home. Despite Gooden and Frias's strained relationship, he allowed her to borrow his vehicle for approximately twenty or twenty-five minutes in order to retrieve the child. When she returned the car, Gooden did

15

not check his luggage in the trunk of the vehicle. He denied all knowledge of the firearms later found in his suitcase and declared that Frias was "the only one that had access [to the vehicle] other than myself." (DE-86, p.265). Thus, the jury understood that someone other than Gooden might have placed the firearms in his suitcase. Expert testimony on the general "nature and belief system of Santeria" would not have clarified or bolstered Gooden's testimony in this regard. Moreover, the trial court did not exclude all references to Santeria. Indeed, Gooden specifically testified that Frias practiced Santeria. (DE-86, p.271). While visiting Frias, Gooden noticed someone had thrown "rice and chicken bones around the curb of the sidewalk." (DE-86, p.272). Gooden knew "it was some form of ritual, and it made [him] very nervous." (DE-86, p.272).

Attorneys have a professional obligation to refrain from filing frivolous motions or appeals. *See* McCoy v. Court of Appeals of Wisc., Dist.1, 486 U.S. 429, 438 (1988); *see also* Moultrie v. United States, 147 F. Supp. 2d 405, 409 (D.S.C. 2001) ("[C]ounsel is not deficient for failure to raise a legally meritless claim on appeal."). Because the trial court properly excluded Medina's testimony, appellate counsel was not ineffective for failing to appeal the issue. This assignment of error lacks merit.

### D. Ground Four: Ineffective Assistance of Appellate Counsel: *Brady* Claim

As his final ground for relief, Gooden contends the government withheld material evidence at the suppression hearing in violation of Brady v. Maryland, 383 U.S. 83 (1963), and that his counsel was deficient for failing to pursue this issue on appeal. Specifically, he asserts that if his original Jamaican drivers' license had been available during the

16

suppression hearing, rather than a photocopy, it would have impeached Trooper DiGiovanni's testimony and altered the outcome of the hearing. Gooden's argument is unpersuasive.

Trooper DiGiovanni testified at the suppression hearing that after he stopped Gooden, a number of different factors caused him to suspect that Gooden was a drug courier. One of these factors was that the information on Gooden's drivers' license "appeared off-center," indicating that it might be fraudulent. (DE-28, pp.16-17). Gooden argues that the original drivers' license would have contradicted DiGiovanni's testimony. However, DiGiovanni also testified to, and the Court found, multiple other factors common to drug couriers supporting DiGiovanni's suspicion: Gooden's vehicle was rented by someone other than Gooden and was a one-way rental; Gooden appeared to have engaged in undelayed travel, meaning he made no significant stops on his trip; Gooden was traveling on Interstate 95, a main drug corridor; Gooden had traveled through the night; and he had driven from New York City, a known source city for illegal narcotics. (DE-28, pp.16-17). In addition, Gooden hesitated when asked his age and could not provide his address in the Bronx. The Court found that these factors, when viewed collectively, were "more than sufficient" to establish reasonable suspicion for Gooden's brief detention during the ensuing canine sniff of his vehicle. (DE-28, p.18).

The Court also determined that two alternative theories--consent and probable cause--sustained the legality of the search. (DE-28, p.7). Assuming for the sake of argument that the original drivers' license could have impeached DiGiovanni's testimony

and thus weakened the government's argument as to probable cause, Gooden's consent to the vehicle search, standing alone, supports the denial of his motion to suppress. He therefore demonstrates no prejudice arising from the unavailability of the original drivers' license at the suppression hearing.

Further, Gooden fails to show that the drivers' license is exculpatory or was withheld. The government produced the original drivers' license at trial. (DE-86, p.69). Upon examining the original at trial, Trooper DiGiovanni testified that the "border and the edging [of the license were] somewhat twisted to the side," *id.* at 70, consistent with his testimony at the suppression hearing that the license "appeared off-center." (DE-28, p.16). As he shows no *Brady* violation and no prejudice arising from the unavailability of the original document at the suppression hearing, Gooden's claim is without merit.

IV. **CONCLUSION**

Because Gooden fails to show that his counsel's performance was objectively unreasonable or demonstrate that prejudice resulted from his counsel's alleged errors, the undersigned finds that he has not sustained his claims of ineffective assistance of counsel. Thus, for the foregoing reasons, it is hereby RECOMMENDED that the government's motion to dismiss, construed as a motion for summary judgment, (DE-105) be GRANTED and that Gooden's motion to vacate (DE-98) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Thursday, February 09, 2012

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE